FILED

DAVID CREWS, CLERK
BY _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

LINDA ANN BROWN, GLORIA RUTH HARRIS,
MARY A. HARRIS, JACQUELINE THOMAS,
QUEEN ESTER GREEN, VIOLETTA ADAMORE,
CHARLES HARRIS, EUGENE HARRIS,
KENNETH HARRIS, and ROBERT HARRIS, JR.                          **PLAINTIFFS**

v.                                                    Civil Action No.: *4:12-CV-75-MPM-JMV*

MARY ROBINSON, CHARLES J. SWAYZE, JR.,
WHITTINGTON, BROCK & SWAYZE, P.A.,
CHARLES E. GIBSON, III, GIGI GIBSON and GIBSON
LAW FIRM, PLLC                                                  **DEFENDANTS**

                                                          Jury Trial Demanded

**COMPLAINT**

        COME NOW the Plaintiffs, by and through their attorneys, and for their Complaint would show

unto the Court as follows:

PARTIES

1.        The Plaintiff Linda Ann Brown is an adult resident citizen of Minneapolis, MN.

          The Plaintiff Gloria Ruth Harris is an adult resident citizen of Brooklyn Park, MN.

          The Plaintiff Mary A. Harris is an adult resident citizen of Minneapolis, MN.

          The Plaintiff Jacqueline Thomas is an adult resident citizen of Minneapolis, MN.

          The Plaintiff Queen Ester Green is an adult resident citizen of Golden Valley, MN.

          The Plaintiff Violetta Adamore is an adult resident citizen of Chicago, IL.

          The Plaintiff Charles Harris is an adult resident citizen of Brooklyn Center, MN.

          The Plaintiff Eugene Harris is an adult resident citizen of Buffalo, NY.

          The Plaintiff Kenneth Harris is an adult resident citizen of Buffalo, NY.

1

The Plaintiff Robert Harris, Jr. is an adult resident citizen of Buffalo, NY.

2.　　　The Defendant Mary Robinson is an adult resident citizen of Greenville, Washington County, MS.

3.　　　The Defendant Charles J. Swayze, Jr. is, upon information and belief, an adult resident citizen of Greenwood, Leflore County, MS.

4.　　　The Defendant Whittington, Brock, & Swayze, P.A., formerly known as Whittington, Brock, Swayze & Dale, P.A., upon information and belief, is a Mississippi corporation with its principal place of business at 308 Fulton Ave., Greenwood, MS.

5.　　　The Defendants Charles E. Gibson, III and Gigi Gibson, upon information and belief, are adult resident citizens of Ridgeland, Madison County, MS.

6.　　　The Defendant Gibson Law Firm, PLLC, upon information and belief is a Mississippi limited liability company with its principal place of business at 447 North Park Dr., Ridgeland, MS 39157.

## JURISDICTION AND VENUE

7.　　　This Court has jurisdiction in that there is a complete diversity of citizenship between all plaintiffs and all defendants and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000. Venue is proper in the Greenville division in that in that some or all of the acts complained of occurred in Washington County, MS.

## FACTUAL ALLEGATIONS

8.　　　Willie Ruth Gines was born in Mississippi on August 4, 1936 and died on November 27, 1999 at Delta Regional Medical Center in Greenville, MS. The ten plaintiffs herein are the surviving children of Willie Ruth Gines, deceased. All of the plaintiffs herein were listed in the obituary of Willie Ruth Gines, a copy of which is attached hereto as Exhibit A.

9.　　　All of Willie Gines' children, with the exception of her youngest, were born in

2

Hollandale, Mississippi. In 1965 Willie Gines and her husband moved the family to Buffalo, N.Y. In approximately 1989, Willie Gines and some of her children moved to Minneapolis, Minnesota, where her brother Frank Gines and sister Glenda Gines already lived. From 1990 to 1992 Willie Gines lived with her daughter Linda Brown in Minneapolis. In 1992, Linda Brown and Willie Gines were visiting in Mississippi. Willie Gines felt it was too cold in Minnesota, and it was decided Willie Gines would stay and live with her mother Bell Gines in Greenville, Mississippi. Linda Brown left her mother in the care of Bell Gines, and from 1992 to 1999 Willie Gines lived with her mother Bell Gines in Greenville, MS. The children of Willie Gines kept in contact with their mother. Many of the children traveled to Mississippi to be with Willie Gines for Thanksgiving in 1998.

10.     For approximately three weeks immediately prior to her death, from October 29, 1999 to November 22, 1999, Willie Ruth Gines was a resident of Magnolia Healthcare, Inc., d/b/a Autumn Leaves Nursing Home in Greenville, MS.

11.     Willie Ruth Gines was transferred from Autumn Leaves Nursing Home to Delta Regional Medical Center on November 27, 1999, where she died.

12.     As set forth in Ex. A, Willie Ruth Gines was survived by ten children. In addition, she was survived by her mother, two sisters, and three brothers, all of whom had actual knowledge of the identities and whereabouts of the plaintiffs herein. In addition, Willie Ruth Gines is listed as having 40 grandchildren. Those grandchildren are the children of the plaintiffs identified herein. In short, Willie Gines had an extensive family, and the whereabouts of Willie Gines' children was known to her family and easily discoverable by others.

13.     The defendant Mary Robinson is a surviving sister of Willie Ruth Gines. At all relevant times, the defendant Mary Robinson had actual knowledge of the identities and whereabouts of the children of Willie Ruth Gines.

14.     It is believed the attorney defendants were advertising for nursing home cases. It is

3

believed Mary Robinson responded to a television ad, and following the death of Willie Gines and prior to September 4, 2001, Mary Robinson entered into a written "Retainer Agreement and Contract to Employ Attorney" with the Gibson Law Firm and Charles E. Gibson III. The Agreement is signed by attorney Charles Swayze, Jr. The listed client was "Willie Ruth Gines by: Mary Robinson (sister)". The Agreement was for the purpose of investigating and potentially pursuing a civil lawsuit against Magnolia Healthcare, Inc., d/b/a Autumn Leaves Nursing Home, Foundation Health Services, Inc., and their employees ("Autumn Leaves") for their treatment and care of Willie Ruth Gines.

15.     On or about September 4, 2001, Mary Robinson, purportedly acting as personal representative of Willie Ruth Gines and on behalf of the wrongful death beneficiaries Willie Ruth Gines, filed a complaint in the Circuit Court of Washington County, MS styled *"Mary Robinson as Personal Representative of Willie Ruth Gines, deceased, and on behalf of the wrongful death beneficiaries of Willie Ruth Gines, deceased v. Magnolia Healthcare, Inc., d/b/a Autumn Leaves Nursing Home, Charles Small, and John Does 1-10"*, civil action no. CI2001-230 (the "Autumn Leaves lawsuit"). In her complaint Mary Robinson alleged that Autumn Leaves Nursing Home was negligent in its treatment and care of Willie Ruth Gines leading to her death. The Autumn Leaves' lawsuit sought actual and punitive damages as a result of the death of Willie Ruth Gines.

16.     Although Willie Ruth Gines was survived by ten living children whose identities were known to Mary Robinson, and whose identities were known, or could have been known to defendant attorneys through the exercise of reasonable care, no one notified any of the Willie Gines' children of the filing of a wrongful death claim alleging negligence in the death of their mother, or notified them of their right to be joined as the proper wrongful death beneficiaries.

17.     On or about May 30, 2003, after the  lawsuit was filed, Mary Robinson, acting through the defendant attorneys, petitioned the Chancery Court of Washington County, MS for letters of administration and approval of her fee contract with the defendant attorneys. In her petition Mary

4

Robinson alleged:

> It is believed that Willie Ruth Gines, deceased, left surviving her sister, your Petitioner, Mary Robinson, 344 South Cornell, Greenville, Washington County, MS 38701 along with other known and unknown heirs-at-law; specifically her mother, Bell Marie Gines, 221 North 9th St., Greenville, Washington County, MS, who joins in this Petition, and <u>may have several children residing in Buffalo, NY, whose names and addresses are unknown at this time after diligent search and inquiry.</u> (emphasis added).

The statement by Mary Robinson that her sister Willie Gines "may have several children whose names and addresses were unknown" was deliberately false. The failure to disclose that Willie Gines was also survived by another sister and three brothers was also intentionally false.

18.     The Petition for Appointment of Personal Representative of Willie Ruth Gines was prepared and signed by the defendant Swayze. At a minimum the language of the petition makes clear the defendant attorneys were on notice that Willie Ruth Gines might have surviving children and that some or all might live in Buffalo, New York. The allegation that Willie Ruth Gines "may have several children residing in Buffalo, NY whose names and addresses are unknown at this time after diligent search and inquiry" was, at a minimum, made with reckless disregard to the duty of the administratrix - and the duty of her attorneys - to make reasonable efforts to identify the proper heirs and beneficiaries of Willie Ruth Gines.

19.     There is absolutely no evidence in the chancery record of any "diligent efforts" by the administratrix or the defendant attorneys to identify or notify any of Willie Ruth Gines' children. None of the children of Willie Ruth Gines were given notice of the petition of Mary Robinson to be appointed as personal representative of the Estate of Willie Ruth Gines.

20.     On July 8, 2003, the chancery court entered an order appointing Mary Robinson as personal representative of Willie Ruth Gines upon Mary Robinson "taking the Oath required by law". The chancellor entered a handwritten note that "should any money be acquired by the Estate, a bond shall be immediately posted in the amount of money acquired by the Estate." The order further provided that

"if necessary, a Determination of Heirship will be filed and considered at a later date". Upon information and belief, the order, with the exception of the handwritten note added by the chancellor, was prepared by defendant Swayze.

21. In March, 2004, the Magnolia Healthcare lawsuit proceeded to trial in the Circuit Court of Washington County, MS. On information and belief, on March 10, 2004, a Washington County jury returned a verdict in favor of Mary Robinson in her capacity as personal representative and on behalf of the wrongful death beneficiaries of Willie Gines in the amount of $2,127,061.44 in actual damages. Upon information and belief, while the trial court had under advisement the issue of whether to allow the jury to consider whether punitive damages should be awarded, the matter settled in the amount of $2,500,000.

22. During the trial Mary Robinson testified as to the existence of the children of Willie Ruth Gines, and it is clear that defendant attorneys were aware of the children of Willie Gines. *See* Exhibit B. Defendant attorneys were clearly aware of the existence of the children by the time of settlement. Still, the plaintiffs were not advised by defendants of the trial, the jury verdict or the settlement.

23. On March 24, 2004 (just two weeks after the jury verdict), Mary Robinson filed a "Petition to Determine Heirs, Next of Kin and Beneficiaries under the Mississippi Wrongful Death Statute of Willie Ruth Gines, Deceased". The Petition was filed in the Chancery Court of Washington County, MS. In her petition, Mary Robinson alleged:

> 4. Petitioner respectfully shows at the time of the death of Willie Ruth Gines she left surviving her as her sole and only heirs at law, Petitioner herein, her sister, Mary Robinson, and her mother, Bell Marie Gines.
>
> 5. Petitioner further shows that the unknown heirs-at-law, if any, next of kin and beneficiaries of the Mississippi Wrongful Death statute, if any, are unknown to Petitioners and that their street addresses and post office addresses are unknown after diligent, reasonable search and inquiry, and that therefore, publication for respondent should be made in accordance with the law.

6

The petition signed by Mary Robinson. The petition was not signed by an attorney as required by Miss. R. Civ. P. 11, but there is no doubt it was prepared by the defendant attorneys.

24.    Unlike the 2003 petition to have Mary Robinson appointed as personal representative, the 2004 petition to determine heirs and wrongful death beneficiaries prepared by defendant attorneys failed to disclose to the chancellor <u>even the mere possibility</u> that Willie Ruth Gines had surviving children, despite testimony from Mary Robinson less than two weeks before in the presence of the defendant attorneys - acknowledging the existence Willie Gines' ten children. Plaintiffs allege that the sworn pleading of Mary Robinson that Willie Ruth Gines "left surviving her <u>as her sole heirs at law</u>, Petitioner herein, her sister, Mary Robinson, and her mother, Bell Marie Gines" was intentionally false. At all times Mary Robinson knew of the actual identity and whereabouts of the surviving children of Willie Ruth Gines. The Petition also does not even mention, much less identify, Glenda Gines, the other surviving sister of Willie Ruth Gines, or any of the three brothers of Willie Gines - who, if there had been no children of Willie Gines, would be heirs/beneficiaries of equal standing to Mary Robinson.

25.    Mississippi courts have long held that an administrator is under an affirmative duty to disclose to the court the existence of even <u>potential</u> heirs and claimants. *See, e.g., Smith v. Estate of King*, 501 So.2d 1120 (Miss. 1987)(*King I*). *See also Smith v. Estate of King*, 579 So.2d 1250 (Miss. 1991) (*King II*). An administrator is a fiduciary to the decedent's heirs. *King I*, 501 So.2d at [2][3]. In *King I* the Mississippi Supreme Court quoted *Diamond v. Connolly*, 251 F. 234 (9th Cir. 1918) for the proposition that "it is too plain for argument that [the administrator's] duty was to advise the court in absolute good faith of all the knowledge he possessed concerning the persons under the law who were entitled to the estate". *King I*, 501 So.2d at [5]. Mississippi has long recognized that attorneys in estate matters have a fiduciary duty to the estate. *Compare Mathews v. Williams*, 633 So.2d 1038, at [1] (Miss. 1994) ("We again remind attorneys for estates of wards and decedents ... that they, too, have special and far-reaching fiduciary duties. It was the obligation of the attorney to advise the conservator of as to his

7

statutory duties, responsibilities, and limitations...."). *See also King II,* 579 So.2d at [3] (Mississippi

Supreme Court finding that the administrator <u>and her attorney</u> breached duties in intentionally failing to

disclose the existence of a potential heir to the court).

> 26. Mississippi Code Ann. Section 13-3-25 provides:

> When unknown heirs are made parties defendant in any proceeding in the chancery court, upon affidavit that the names of such heirs are unknown, the complainant may have publication of summons for them and such proceedings shall be had thereupon in all respects as are authorized in the case of a non-resident defendant. <u>When the parties in interest are unknown, and affidavit of that fact be filed, they may be made parties by publication to them as unknown parties in interest.</u>

Miss. R. Civ. P. 4(c)(4) provides:

> (A) If the defendant in any proceeding in a chancery court, or in any proceeding in any other court where process by publication is authorized by statute, be shown by sworn complaint or sworn petition, or by a filed affidavit, to be a nonresident of this state or not to be found therein on diligent inquiry and the post office address of such defendant be stated in the complaint, petition, or affidavit, or if it be stated in such sworn complaint or petition that the post office address of the defendant is not known to the plaintiff or petitioner after diligent inquiry, or if the affidavit be made by another for the plaintiff or petitioner, that such post office address is unknown to the affiant after diligent inquiry and he believes it is unknown to the plaintiff or petitioner after diligent inquiry by the plaintiff or petitioner, the clerk, upon filing the complaint or petition, account or other commencement of a proceeding, shall promptly prepare and publish a summons to the defendant to appear and defend the suit...

> ...

> (D) When unknown heirs are made parties defendant in any proceeding in the chancery court, upon affidavit that the names of such heirs are unknown, the plaintiff may have publication of summons for them and such proceedings shall be thereupon in all respects as are authorized in the case of a nonresident defendant. When the parties in interest are unknown, and affidavit of that fact be filed, they may be made parties by publication to them as unknown parties in interest.

Based on the false representation of Mary Robinson and her attorneys that (1) Mary Robinson and Bell

Gines were the "sole and only heirs", (2) that "the unknown heirs, *if any*, next of kin and beneficiaries

under the Mississippi Wrongful Death Statute, *if any*, are unknown to Petitioners" (emphasis added) and

(3) that reasonable and diligent search had been made, summons by publication was issued and published

in the Delta Democrat Times, a newspaper in Greenville, MS. At all times, Mary Robinson was aware of

the existence of children of Willie Ruth Gines, and further aware that none of the children of Willie

Gines resided in Washington County or were likely to receive a paper published in Greenville, MS. Such

facts were known, or through the exercise of reasonable care should have been known, to the defendant

attorneys, and defendant attorneys breached their duties in preparing a petition that they knew or should

have known was false.

     27.    In *Caldwell v. Caldwell*, 533 So.2d 413, 416 (Miss. 1988), the Supreme Court quoted

Bunkley and Morse's *Amis, Divorce and Separation in Mississippi*, § 15.01(3) (1957), as follows:

> It seldom happens that the published notice is defective, but the usual trouble is that the averments of the affidavit, or sworn bill, are insufficient to authorize any publication to be made at all. This arises out of a misconception of the purpose of the statute, or else a misunderstanding of its provisions. Publication for a non-resident, or absent defendant, is not a mere formal or perfunctory matter; but the purpose is to give the defendant actual as well as constructive notice of the suit and an opportunity to make defense thereto, if it be reasonably possible to do so. Due process of the law requires notice and an opportunity to be heard, and this applies to residents and non-residents alike when sued in the courts of this state... .

> If he cannot be found in this state, and any fact in regard to his whereabouts and/or post office and street address be unknown to the complainant, then he or she must make an honest and diligent effort, or inquiry, to ascertain the same, so that when publication is made the clerk may send him a copy of the notice. Good faith to the court, as well as the statute, requires this to be done before any affidavit for publication is made. And if, at any stage of the proceedings, it should appear that such duty was not performed, and that the affidavit was not made in good faith after diligent inquiry under the facts of the particular case, the process should be quashed by the court, of its own motion, as a fraud on its jurisdiction; for courts sit to protect the rights of defendants as well as to enforce those of complainants.

> *Divorce and Separation in Mississippi* at 283.

*See Caldwell,* 533 So.2d at 415-416. *See also Byrd v. Woods,* ___ So.2d ___ (No. 2011-CA-00347-

COA) (Miss. Ct. App. June 16, 2012) (process by publication invalid and party not bound because

affidavit was not made in good faith after diligent inquiry). Additionally, the Mississippi Supreme Court

has held that summons by publication for "unknown heirs" when the administrator has actual knowledge

of a known or reasonably ascertainable heir is constitutionally defective notice. *See King II*, 579 So.2d

at [4], *citing Tulsa Professional Collection Servs. v. Pope*, 485 U.S. 478 (1988). Under such

9

circumstances, actual notice is required. *King II*, at [4].

28.     Mississippi Code Annotated §11-7-13, of course, is Mississippi's wrongful death statute. This statute provides:

> Whenever the death of any person ... shall be caused by any real, wrongful, or negligent act or omission ... as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof ... and such person shall have left [certain survivors] the person or corporation, or both, that would have been liable if death had not ensued ... shall be liable for damages, notwithstanding the death.... The action for such damages may be brought in the name of a personal representative of the deceased person ... for the benefit of all persons entitled under the law to recover, or by the widow for the death of her husband, or the husband for the death of the wife, or by the parents for the death of a child, or in the name of the child, or in the name of a child for the death of a parent, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or brother for the death of a brother, or all parties interested may join in the suit, and there shall be but one (1) suit for same death which shall ensue for the benefit of all parties concerned....
> ...
> ... [I]f the deceased has no husband or wife, the damages shall be equally distributed to the children....

29.     Thus, if Willie Ruth Gines had surviving children at the time of her death, Mary Robinson was clearly not an heir or beneficiary. Willie Gines' children would have taken as heirs or wrongful death beneficiaries to the exclusion of Mary Robinson, sister, or Bell Marie Gines, mother. Mary Robinson signed a deliberately false petition in obtaining process by publication. Mary Robinson failed to disclose to the court what good faith and diligent efforts she or her attorneys made to identify, locate or give notice to the children of Willie Ruth Gines, all of whom were listed by name and city of residence in the obituary of Willie Ruth Gines. Based on deliberate false representations by Mary Robinson, the chancery clerk issued invalid process by publication, and the chancellor relied on invalid process and representations of counsel in entering an order dated May 10, 2004 holding that Mary Robinson and Bell Gines "are the sole known heirs at law, next of kin and beneficiaries under the Mississippi Wrongful Statute of Willie Ruth Gines, Deceased, and are the only people entitled to take under the Mississippi Wrongful Death Statute as a result of the alleged wrongful death of Willie Ruth Gines, Deceased". The order was prepared and signed by the defendant Swayze. The signature of

10

Swayze constitutes a certificate the attorney has read the pleading, and that the to the attorney's knowledge, information and belief, there is a good ground to support it. *See* Miss. R. Civ. P. 11. Plaintiffs allege Swayze breached his fiduciary duties to the court and to the plaintiffs when he prepared and signed the order at a time he knew or should have known of the false petition and the invalid service of process.

30.     The record of the Washington County Circuit Court action contains a transcript of a settlement conference that suggests the Autumn Leaves lawsuit was settled for $2,500,000. The chancery file does not reflect that the Chancery Court was ever notified of amount of the settlement, and it does not appear that the proceeds were ever accounted for to the Chancery Court by the administratrix, or approved by the chancellor. Presumably the $2,500,000 proceeds, net of a 50% attorneys' fee, was paid to Mary Robinson and perhaps Bell Gines, but plaintiffs have no actual knowledge at this time of the distribution of the settlement proceeds.

31.     Plaintiffs had no knowledge of the Autumn Leaves lawsuit, the settlement, or the determination of beneficiaries until after Bell Gines' death  in August 2011.  Since that time, plaintiffs have retained counsel and have acted diligently to determine the true facts, but even to this date have been given no information by Mary Robinson or the defendant attorneys as to the actual distribution.

32.     Plaintiffs allege that Mary Robinson had an affirmative duty to identify and disclose to the chancery court "in absolute good faith of all the knowledge [she] possessed concerning the persons under the law who were entitled to the estate".  Plaintiffs allege that Mary Robinson knowingly and with deliberate falseness misrepresented in her petition that she and Belle Gines were the "sole" heirs and beneficiaries of Willie Ruth Gines in obtaining invalid process by publication.

33.     Plaintiffs allege that the defendant attorneys had independent fiduciary duties to all wrongful death beneficiaries of Willie Ruth Gines and had an affirmative duty to identify and disclose beneficiaries, or even potential beneficiaries, to the Chancery Court of Washington County, MS.

11

Defendant attorneys, as evidenced by the original petition seeking appointment of personal representative, at a minimum, had notice that Willie Gines might have children residing in Buffalo, NY. The attorneys - by the time of trial - unquestionably had notice of the existence of Willie Gines' ten children. The defendant attorneys were negligent and breached their fiduciary duties in assisting Mary Robinson in preparing a false petition, obtaining invalid process, in failing to conduct a good faith effort to locate known beneficiaries, and in failing to provide actual notice to the children of the hearing to determine heirs.

34. The actions of the defendant Mary Robinson constituted fraud and fraudulent concealment. Mary Robinson undertook such actions with the intent and effect of concealing her actions from plaintiffs, the surviving children and rightful heirs and beneficiaries of Willie Ruth Gines.

35. The actions of Mary Robinson in misleading the Chancery Court, in obtaining invalid process, and in obtaining a fraudulent order were aided and abetted by defendant attorneys. *Cf. Dale v. ALA Aquisition, Inc., 203 F. Supp 2d 694, at [8]* (holding that Mississippi would follow majority rule and recognize a claim of aiding and abetting fraud as recognized under The Restatement (Second) of Torts section 876). Such section provides "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself; or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to a third person." Plaintiffs allege (a) the defendant attorneys knew or should have known that Mary Robinson breached her fiduciary duties to the court and the beneficiaries and provided substantial assistance through their own actions or inactions and/or (b) the defendant attorneys gave substantial assistance to Mary Robinson, and breached their separate duties to plaintiffs.

36. Plaintiffs did not know and were not given actual notice as required by law of the

12

existence of the pending civil lawsuit, the jury verdict in favor of Mary Robinson as personal representative and for the wrongful death beneficiaries of Willie Ruth Gines, the subsequent settlement, the subsequent petition to determine heirs and wrongful death beneficiaries, or the distribution of the wrongful death proceeds. Plaintiffs did not know and could not have known of the foregoing facts until after August 20, 2011, at which time some returned to Mississippi following the death of their grandmother Bell Gines. After discovering the foregoing facts, plaintiffs have acted diligently in trying to determine and ascertain the true facts arising from the lawsuit for the death of Willie Ruth Gines and the subsequent chancery proceedings.

37.     There is no doubt that the chancellor relied upon the representations of Mary Robinson and her counsel. *Compare King II, 579 So.2d at [3]* ("Mrs. King intentionally chose not to reveal the existence of [an illegitimate child] to the court relying on her and her attorney's determination that the [child] was not an heir. Under the particular facts of this case we have no difficulty reaching the conclusion that the trial court erred in determining that the administratrix and her attorney did not perpetuate a fraud on the court"). *See also Estate of Richardson*, 903 So.2d 51 at ¶7 (Miss. 2005) ("no where did Richardson or Turnage [Richardson's counsel] advise the chancellor that any of the named individuals were 'potential' heirs or indicate there was any remaining controversy on or challenge to the ... right of heirship or their right to receive a portion of a wrongful death settlement proceeds.")

38.     Because summons by publication was not made in good faith and was based upon fraud, the Chancery Court never obtained jurisdiction over plaintiffs, and the determination of wrongful death beneficiaries is not binding as to them. *See Byrd v. Woods*, ___ So.2d ___ (No. 2011-CA-00347-COA) (Miss. Ct. App. June 16, 2012)

39.     Plaintiffs recognize that as of the time of this Complaint, that there is an order of the Chancery Court of Washington County which declares that Mary Robinson and Bell Gines are the sole and only heirs and wrongful death beneficiaries of Willie Ruth Gines. Plaintiffs further recognize that

this federal court may be without power to set aside that state court judgment. Notwithstanding, federal courts have long recognized that a United States federal court is a court of equity, and as such has the power to deny, on equitable grounds, the fruits of a judgment fraudulently obtained in state court. *See, e.g., Diamond v. Connolly*, 251 F. 234, 240 (9th Cir. 1918) ("although federal court will not disturb the decree of the probate court by annulling or supervising the same, nevertheless as a court of equity it is open to hear the complaint [of heirs wrongfully deprived of estate], and may deprive the defendants of the fruits of a fraudulent judgment obtained in a state court") citing *Arrowsmith v. Gleason*, 129 U.S. 86 (1889) (United States federal court had power in equity to deprive guardian of the fruits of court approved sale which was procured through fraud) and *Simon v. Southern Railway Co.*, 236 U.S. 117 (1915) (United States federal court had power to enjoin parties from enforcement of state court judgment fraudulently obtained without notice).

40. Plaintiffs now bring this action and allege Mary Robinson breached her fiduciary duties and committed actual fraud, and fraudulently concealed her actions in obtaining a fraudulent judgment declaring her and Bell Gines to the the sole heirs and beneficiaries.

41. Plaintiffs allege defendant attorneys were negligent, grossly negligent and breached their fiduciary duties to plaintiffs.

42. Plaintiffs allege the acts of Mary Robinson and the attorneys proximately deprived plaintiffs of their right to the wrongful death proceeds

43. Plaintiffs allege that at all times defendant Swayze acted as an employee of defendant Whittington, Brock & Swayze, P.A.; that at all times defendant Charles Gibson and Gigi Gibson acted as employees of Gibson Law Firm, PLLC; and that said entities are vicariously liable for the acts or omissions of its actual or apparent employees or agents involved in the Circuit and Chancery proceedings, named or unnamed in this Complaint.

44. Plaintiffs further allege that at all relevant times, defendant attorneys, and their respective

14

firms, associated each other and formed a joint venture for the handling of the Autumn Leaves' lawsuit and the related chancery proceeding, and that the defendant attorneys and firms are vicariously, and jointly and severally, liable for the acts or omissions of the other. *See, e.g., Duggins v. Estate of Washington, 632 So.2d 420 (Miss. 19*93) (attorneys who associate are jointly and severally liable for the acts of the other; attorney liable for punitive damages based on acts of associated attorney).

45.     Plaintiffs allege defendant attorneys are jointly and severally liable with Mary Robinson in causing damage to the plaintiffs by aiding and abetting Mary Robinson's conduct and breaching their own duties to the proper beneficiaries.

46.     The Mississippi Supreme Court has recognized that breach of fiduciary duty, in and of itself, is an "extreme or special additional circumstance" which justifies the imposition of punitive damages. *See, e.g.*, *Fought v. Morris*, 543 So.2d 167, 173 (Miss 1989) ("breach of fiduciary duty, among others, is recognized as an "extreme or a special circumstance when punitive damages may be awarded.") Where there is breach of fiduciary duty, the breach need not be intentional or willful. *See, e.g., Ross-King-Walker, Inc. v. Henson,* 672 So.2d 1188, 1192 (Miss. 1996) ("malice or ill will is not necessary for a punitive damages award"; recognizing breach of fiduciary duty is an exceptional circumstance warranting punitive damages).

47.     The Mississippi Supreme Court has also recognized that where there is a breach of fiduciary duty prejudgment interest <u>must</u> be awarded. *See, e.g., Russell v. Russell*, 144 So. 542 (Miss. 1933) (for breach of fiduciary duty the trial court awarded prejudgment interest at the rate of 6 percent, and compounded it; Mississippi Supreme Court holding the awarding of interest in a case where a fiduciary relationship had been breached "was not discretionary" and "the interest must be charged and compounded as the court did in this case.") *Russell,* 144 So. at 543.

48.     Plaintiffs seek:

15

(a) an accounting of all funds recovered on behalf of the death of Willie Ruth Gines;

(b) recovery *as damages* from defendants all amounts which should have been properly paid to the children of Willie Ruth Gines as the proper heirs or wrongful death beneficiaries of Willie Ruth Gines;

(c) punitive damages from defendants for the fraudulent conduct of Mary Robinson and for the grossly negligent actions and breach of fiduciary duty by the defendant attorneys;

(d) pre-judgment interest from the date of the wrongful disbursement, until paid, compounded as required by law;

(e) attorney's fees;

(f) expenses, statutory costs and such other damages as may be proved herein;

(g) alternatively or in addition, a disgorgement of fees by the defendant attorneys for breach of fiduciary duty and/or a determination that plaintiffs are not bound by a 50% contract they never signed, were given notice of, or approved; and

(h) such further actual or equitable relief as may be appropriate.

49. Plaintiffs pray that Mary Robinson be enjoined from spending or otherwise wasting or disposing of wrongfully acquired funds.

50. Plaintiffs pray that defendant attorneys be ordered to pay into the registry of this Court all fees charged recovered from the lawsuit pending resolution of this matter.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment of and from the Defendants, jointly and severally, for all actual damages sustained as a result of the conduct of the Defendants, punitive damages, attorney's fees, pre-judgment interest, expenses, costs, and such other and further damages or relief as they may be entitled as may be proved herein, all in an amount in excess of $75,000. Plaintiffs pray for a jury trial on all issues so triable.

16

Respectfully submitted,

MERKEL & COCKE, P.A.

_____

William B. Raiford, III (MSB 8390)
P.O. Box 1388
30 Delta Avenue
Clarksdale, MS 38614
662-627-9641
Attorneys for Plaintiffs
wraiford@merkel-cocke.com


Charles M. Merkel, Jr. (MSB 2884)
P.O. Box 1388
30 Delta Avenue
Clarksdale, MS 38614
662-627-9641
Attorneys for Plaintiffs
cmerkel@merkel-cocke.com

*Obsequies*

*In Loving Memory
of the late*

# MISS WILLIE RUTH GINES

*August 4, 1936* — *November 27, 1999*

*Saturday, December 4, 1999*
*1:00pm*

*Frye Funeral Home Chapel*
*608 Broad Street*
*Leland, Mississippi*

*Interment*
*Delta Memorial Gardens*
*Highway 1 North — Greenville, Mississippi*



**PLAINTIFF'S
EXHIBIT**

A

# OBITUARY

MISS WILLIE RUTH GINES was born August 4, 1936 to Mrs. Bell Marie Gines in Port Gibson, Mississippi.

In later years she moved to Buffalo, New York. After spending several years in Buffalo, Willie Ruth returned home to Mississippi.

She passed this life on November 27, 1999 at Delta Regional Medical Center in Greenville.

Willie Ruth is survived by her mother, Bell Marie Gines of Greenville; four (4) sons, Charles Harris of Minneapolis, MN, Eugene Harris, Kenneth Harris, and Robert (Frances), all of Buffalo, NY; six (6) daughters, Mary Ann Harris, Glory Ruth Harris, Queen Ester (Willie) Green, Linda Ann (Sam) Brown and Jacqueline (Jack) Thomas, all of Minneapolis, MN and Vyletta (Eric) Adamore of Chicago, IL; three (3) brothers, Albert (Mary) Bentley and Myles Gines, Both of Greenville, and Frank (Glenda) Gines of Minneapolis, MN; two (2) sisters, Mary (Jackie) Robinson of Greenville and Glenda Gines of Minneapolis, MN; two (2) aunts, Annie Ruffins of Chicago, IL and Mary Grayson of Port Gibson, MS; one (1) uncle, Robert Bentley of Greenville; one (1) great-uncle, Mose Garner of Port Gibson, MS; 40 grandchildren; 28 great-grandchildren; and a number of nieces, nephews, cousins, other relatives and friends.

# Order of Service

Prelude

Processional ------------------------------ The Family

Congregational Song

Scripture & Prayer

Congregational Song

Mistress of Ceremony ---- Mrs. Ethel Preston

Tribute -------------------------- Mr. John Turner

Expressions (3 Minutes Please)

Acknowledgment of Condolences

Obituary ----------- Read Silently --- Soft Music

Solo ------------------------ Mrs. Sallie Jordan

Eulogy ------------------ Rev. Thomas Morris, Sr.

Viewing

Recessional

# I'm Free

I'm free, free from all of the suffering,
the hurting, the aching, the pain;
The thundering, the lightning, the storms, and the rains.
Free I said, free from the troubles that surround the worrying, the
heartaches, the crying, and the pain.
Hallelujah, I'm free, I'm free.
For I have a mansion in store,
you don't have to worry and you don't have to cry anymore.
I'm with my Father, my Savior, my King of Kings,
My peacemaker, my pain-taker, my everything.
So have faith in God, live right, and love all men
And one day we shall be together again.
Thank God, I'm free!

## PallBearers
### Sons and Brothers

## Flower Bearers
### Friends of the Family

## Acknowledgment

God did not promise sunshine always; nor did He promise rain without the
rainbow. This tells us that He did not promise happiness without sadness.
Today we experience this sadness but yet we rejoice because God is in total
control. Thanks so much for helping us to bear this burden. We will forever
be grateful to each of you.

*The Gines Family*

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, MISSISSIPPI

MARY ROBINSON, as Personal Representative
of Willie Ruth Gines, Deceased and on
Behalf of the Wrongful Death Beneficiaries
of Willie Ruth Gines, Deceased                    PLAINTIFF

V.                                          NO.  2001-230

MAGNOLIA HEALTHCARE, INC., d/b/a
Autumn Leaves Nursing Home, et al           DEFENDANTS

*******************************************************
TRANSCRIPT OF THE TESTIMONY OF BELL MARIE GINES, JACKIE ROBINSON,
AND MARY ROBINSON AND THE OPENING STATEMENTS AND CLOSING ARGUMENTS
OF COUNSEL HAD AND DONE IN THE TRIAL OF THE ABOVE-STYLED AND -
NUMBERED CAUSE BEFORE THE HONORABLE ASHLEY HINES, CIRCUIT JUDGE, AND
A JURY OF TWELVE MEN AND WOMEN, DULY IMPANELED, ON MARCH 4 THROUGH
MARCH 5, 2004, AND MARCH 8 THROUGH MARCH 10, 2004.
*******************************************************

APPEARANCES:

        Present and Representing the Plaintiff:

                HONORABLE CHARLES E. GIBSON, III
                HONORABLE GIGI GIBSON
                P. O. Box 3493
                Jackson, MS  39207

                HONORABLE CHARLES J. SWAYZE, JR.
                HONORABLE ALISON P. PITMAN
                Whittington, Brock, Swayze & Dale
                P. O. Box 491
                Greenwood, MS  38935

        Present and Representing the Defendant:

                HONORABLE MICHAEL HEILMAN
                HONORABLE PATRICIA KENNEDY
                Heilman, Kennedy & Graham
                P. O. Drawer 1079
                Jackson, MS  39215

                HONORABLE L. ABRAHAM ROWE, JR.
                Quintairos, Prieto, Wood & Boyer
                125 South Congress Street
                Jackson, MS  39201



1                          **MARCH 4, 2004**

2                              (MR. GIBSON BEGAN HIS OPENING STATEMENTS

3                  AT 1:25 P.M.:)

4     **OPENING STATEMENTS BY MR. GIBSON:**

5          Members of the jury, this morning in voir dire we

6     told you about the needless and senseless tragedy of

7     Willie Ruth Gines' death.  The evidence is going to

8     show you that Ms. Gines died of thirst as a result of

9     her treatment in Autumn Leaves Nursing Home.  Water was

10    a mere few feet away.

11         I want to tell you we appreciate your time and

12    your attention in coming here.  You, the jury, speak as

13    the conscience of the community.  Out of all the people

14    that were brought to the courthouse today, you were

15    chosen to hear Willie Ruth Gines' case.

16         Now, everybody here has a function.  The judge

17    keeps order amongst the lawyers.  He decides what

18    evidence can be given.  He rules on objections.  And he

19    will instruct you as to the law in this case.  The

20    jury, you, you listen to the evidence.  You see the

21    evidence, and you decide the issues of fact, based upon

22    the judge's instructions.  Our court reporter here

23    takes everything down.  We have bailiffs that carry you

24    in and out of the courtroom.  And we have the clerk of

25    the court that is here.  And the lawyers.

1      What do the lawyers do?  Well, I, as a lawyer

2    speak for the victim.  I'm the one who is speaking to

3    you for Willie Ruth Gines.  There are two stories.

4    There's a story about Autumn Leaves Nursing Homes.  And

5    that's a picture of Autumn Leaves Nursing Home right

6    there.  There are a couple of pictures there.  We'll

7    let you see those.  The other story -- this is out --

8    out north toward Delta Regional Medical Center.  And

9    the other story is a story of Willie Ruth Gines.

10    That's a picture of Ms. Gines made sometimes -- maybe

11    1990, maybe later, according to family.  I'm not sure

12    when it was made.  But it's the only picture that we

13    could find of this lady.

14      The two stories go like this.  Ms. Gines was

15    brought down to Greenville, Mississippi, from some

16    place in New York by her family, who abandoned her.

17    She was schizophrenic.  She was having mental problems.

18    She got down here, and she came under the care of her

19    mother Ms. Bell Marie Gines.

20      You're going to hear -- what we do here and the

21    reason we're making a statement is kind of paint a

22    picture of what you're going to hear from the witness

23    stand.  We're going to have witnesses come up here, and

24    each one of them knows a part of the story.  Now what

25    I'm telling you is not evidence, but it's to give you a

1   road map or an idea or a preview, if you will, of what

2   you're going to be hearing.

3        The first witness you will likely hear from, you

4   will hear from, is Ms. Bell Marie Gines.  Now she is

5   the mother of Willie Ruth Gines.  She's going to tell

6   you that when the family from Buffalo brought her down

7   -- that's Ruth Gines -- down here, Ms. Bell Gines took

8   her in her house.  Took her home.  That was thirteen,

9   fourteen -- thirteen and a half years before she died.

10  Ms. Gines is eighty-five today.  So five years ago she

11  was eighty, and before that, she was seventy-six,

12  seventy-seven here thirteen years back.  She took Ruth

13  Gines in, got her to some doctors, and got her on some

14  anti-psychotic medicine.  She had schizophrenia, as I

15  said.  Schizophrenia is a treatable mental illness.

16  These anti-psychotropic drugs kind of control the

17  delusions.  And you will hear about Ruth, how she

18  related to the family.  You'll hear how she ate.  How

19  she loved to watch baseball.  How she could follow

20  baseball with her brother-in-law, Jackie.  Now, you're

21  going to hear a story of a mother's love and a mother's

22  care for thirteen years.  She cared for her for

23  thirteen years, got her medication.  She chopped up her

24  food.  She fed her her food.  She gave her water.  Just

25  before Ms. Gines, Ruth Gines went into the nursing

M. Robinson – Direct                                          62.

**MARY ROBINSON**

1

2    upon being called to testify as a witness on behalf of

3    the Plaintiff, after having been first duly sworn by

4    the Court, testified as follows, to wit:

5    **DIRECT EXAMINATION BY MR. GIBSON:**

6         Q.   Good morning, Ms. Robinson, how are you?

7         A.   Good morning.  Fine.

8         Q.   I'm going to as you to speak up.  Your voice

9    is a little soft.  If you'll speak up and kind of speak

10   loudly to me so the jury could hear you, I would

11   appreciate it.  Would you do that?

12        A.   Yes, sir.

13        Q.   All right.  Where do you live?

14        A.   344 South Cornell in Greenville.

15        Q.   How long have you lived there?

16        A.   Sixteen -- 16 years.

17        Q.   And where did you live before that?

18        A.   I lived 221 North 9th Street here in

19   Greenville.

20        Q.   Are you married?

21        A.   Yes, sir.

22        Q.   Who is your husband?

23        A.   Jackie Robinson.

24        Q.   Who is your mother?

25        A.   Bell Marie Gines.

M. Robinson - Direct                                    64.

1      Q.    What about Willie Ruth Gines when she was

2   alive?

3      A.    Same thing.  I -- it's my job to do that.

4      Q.    When did Willie Ruth Gines come to

5   Greenville, Mississippi?

6      A.    I think it was in the early 70s, like '70,

7   '71, something like that.  I'm not too for sure on

8   that.

9      Q.    About how long ago did she --

10     A.    It's about -- well, she been here -- she had

11  been here about 13, 13 years.  13 years.

12     Q.    Thirteen years when?  What happened?

13     A.    When she first came here?  Is that what you -

14  -

15     Q.    All right.  Was she born here in Greenville,

16  Mississippi, Ms. Gines, Willie Ruth?

17     A.    Yes, she was born in Mississippi.

18     Q.    Did she go away for a time?

19     A.    Yes, sir, she did.  She moved to New York.

20  And then I think she went over in Minnesota.

21     Q.    Do you remember the year or the date or some

22  reference in time when she came back here after living

23  away?

24     A.    I'm not for sure on the date, but she had

25  been here 13 -- so she came here -- let me go back to

M. Robinson - Direct                                          74.

1      A.    On November 6th?  Yes, sir.

2              MS. KENNEDY:  We object to the continued

3           leading of this witness.

4              THE COURT:  Well the objection is

5           sustained.

6      Q.    Before Ms. Gines went into the nursing home,

7  were you in a position to observe her skin condition?

8      A.    Yes, sir.

9      Q.    What was that skin condition?

10     A.    She had beautiful skin.  Really pretty skin.

11  It was fair all over.  You know, we kept her skin

12  beautiful.  We oiled her skin for her.  She could oil

13  her skin also.

14             MR. GIBSON:  Your Honor, may I confer

15          just a minute?

16             THE COURT:  You may.

17             (BRIEF PAUSE IN THE PROCEEDINGS.)

18             MR. GIBSON:  Please the Court, we tender

19          the witness.

20             THE COURT:  Very well.  Is there any

21          cross-examination of this witness?

22             MS. KENNEDY:  Yes, Your Honor.

23  CROSS-EXAMINATION BY MS. KENNEDY:

24     Q.    Good morning, Ms. Robinson.

25     A.    Good morning.

M. Robinson - Cross                                    89.

 1                  (BENCH CONFERENCE WAS CONCLUDED.)

 2    **MS. KENNEDY CONTINUING:**

 3         Q.    Ms. Robinson, have you ever been involved in

 4    a lawsuit before this one?

 5         A.    Yes, ma'am.

 6         Q.    Okay, and did you receive money for that

 7    lawsuit?

 8         A.    Yes, ma'am.

 9         Q.    Willie Ruth had been married, hadn't she?

10         A.    Yes, ma'am.

11         Q.    And her husband or exhusband, he's not

12    involved in this lawsuit, is he?

13         A.    No, ma'am.

14         Q.    Did Willie Ruth have children?

15         A.    Yes, ma'am.

16         Q.    How many?

17         A.    Ten.

18         Q.    Are any of them in this courtroom right now?

19         A.    No, ma'am.

20         Q.    Are any of them involved in this lawsuit at

21    all?

22         A.    No, ma'am.

23              **MS. KENNEDY:**  Give me just one second.

24              (BRIEF PAUSE IN THE PROCEEDINGS.)

25         Q.    Just one more thing.  You remember testifying

Closing Arguments by Mr. Gibson                    100.

1   It's your decision, whatever that might be.  Let's

2   challenge Autumn Leaves Nursing Home to clearly and

3   unequivocally tell you what their defense is in this

4   case.  Autumn Leaves is responsible for the death of

5   Willie Ruth Gines.  Let's challenge Autumn Leaves

6   Nursing Home to tell us their opinion as to the value

7   of Willie Ruth Gines' life.  Let's tell -- let's

8   challenge them to tell us of the value of her pain, her

9   suffering, her mental anguish.  Let's hear if Autumn

10  Leaves is up to that challenge.

11                    **MR. HEILMAN:**  May it please the Court.

12                    **THE COURT:**  You may proceed.

13                    (MR. HEILMAN BEGAN HIS CLOSING ARGUMENT

14           AT 11:35 A.M.:)

15  **CLOSING ARGUMENT BY MR. HEILMAN:**

16       It has been a long week and a half, and there's

17  been a lot of evidence in front of you.  Remember what

18  we said at the beginning of this case.  In opening I

19  made some very strong statements.  I'm going to make

20  some more now.

21       The first one is going to be, make them prove

22  their case.  You just heard Mr. Gibson get up here and

23  say, "Make Autumn Leaves come up here and tell you what

24  their defense is.  Make them prove their case."  You

25  remember at the beginning, at the very beginning in

1  with impunity.  Make no mistake we're here for one

2  reason.  Nursing homes are easy targets.  Sue a nursing

3  and get a big check.  That's why we're here.  That's

4  the only reason these people's nursing home -- it's the

5  only reason these people's nursing home is in this

6  courtroom today.

7      Let's talk about some common sense, some more

8  common sense.  You heard testimony yesterday Ms. Gines

9  has ten children.  Where are they?  Not one of her ten

10  children are here saying this nursing home abused our

11  mother.  Not one.  Not one of them is here saying your

12  nursing home murdered our mother.  Not one of them is

13  saying your nursing home abused our mother.  No.

14  They're not here.

15      And you know what else?  As we said in opening,

16  doctors and nurses and health care providers owe a duty

17  to the world.  And this is their duty.  If they see

18  abuse and neglect or anything of that nature, they have

19  to report it and they have to do something about it.

20  And do you know why?  Because they hold in their hands

21  our health.  That's the most important thing. And when

22  they see those problems, they got to do something about

23  it.  And if they don't, they ought to have their

24  licensed ripped immediately.  And you know what?  There

25  were numerous doctors in the hospital who worked on Ms.

Closing Argument by Mr. Heilman                    119.

1  their case.  They can't do it. We know they can't do

2  it.  They never have done it.  I don't get to come up

3  and talk to you again.  Mr. Gibson is going to get up

4  here, and he's going to respond to everything I've

5  said, or try to.  I don't get to respond.  I'd love to,

6  but I don't get to.  Render your verdict for the

7  defendant with the same confidence that your common

8  sense tells you that Autumn Leaves Nursing Home did

9  meet the standard of care and did everything reasonable

10  and everything they were supposed to.

11        Thank you.

12              **THE COURT:**  Mr. Gibson.

13              (MR. GIBSON BEGAN HIS FINAL ARGUMENT AT

14        12:10 P.M.)

15              **MR. GIBSON:**  Your Honor, may we turn

16        this back on?

17              **THE COURT:**  You may.

18              **MR. GIBSON:**  Your Honor, may we just

19        have a moment to wait then until they get

20        this machine?

21              **THE COURT:**  Very well.

22              (BRIEF PAUSE IN THE PROCEEDINGS.)

23  **FINAL ARGUMENT BY MR. GIBSON:**

24        Ladies and gentlemen, I have fifteen minutes to

25  respond to everything that Mr. Heilman said in

Final Argument by Mr. Gibson                                    120.

1    approximately thirty minutes.  I want to just touch on

2    a couple of things.

3         He talked to you about Ms. Gines' children not

4    being here.  Well, they haven't been here for thirteen

5    years.  The people that loved her and cared for her for

6    thirteen years are here.  They've been gone a long

7    time.

8         Now, he also said that nursing homes are an easy

9    target.  Let me really tell you who the easy target

10   was.  It was Ms. Gines.  She was helpless, unable to

11   take care of herself in any way.  Totally dependent on

12   them for food, water, and drink.  She didn't get any

13   except a cup full for three days.  Now, who was the

14   target?  Who was the victim?  Not the nursing home.  It

15   was Ms. Gines.

16        They talk about Dr. Blaylock.  Now nobody's tried

17   to conceal from you the fact that Ms. Gines had a long

18   history of illness.  We've told you that.  We've been

19   up front about that.  Nobody has concealed anything

20   about that.  We said she went to see Dr. Blaylock, and

21   she was assessed by the nursing home.  You don't put

22   people that are well in a nursing home.  That's just a

23   fact.  We know that.  Everybody knows that.

24        You know, if they aren't shifting the blame to the

25   hospital or the doctor, I don't know what they're